FREDERICK E. RICHARDS v. THE CONTINENTAL INSURANCE COMPANY OF THE CITY OF NEW YORK.

*Fire insurance—Occupancy of dwelling-house—Abandonment—Forfeiture of policy—Waiver.*

1. A dwelling-house from which a tenant had removed with no intention of returning, although he had left some goods in the

house which he did not need at the time for the purpose of housekeeping, and which remained so unoccupied for two days, when it was destroyed by fire, is held to have been *vacant* within the rule laid down in *Bonenfant v. Ins. Co.*, 76 Mich. 653, which question of vacancy, upon the facts stated, is held to have been one of law for the court.

2. In such a case a statement by an insurance adjuster to the assured that the company considered the house vacant, but were not going to be technical about the matter, being satisfied that he had sustained the loss, and an offer to pay $450 and cancel the policy, which called for $900, a sum less than the value of the property, will not amount to a waver of the right to forfeit the policy under a clause providing for such forfeiture in case the house became vacant or unoccupied.

Error to Jackson. (Peck, J.) Argued November 19, 1890. Decided December 5, 1890.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Thomas A. Wilson*, for appellant, contended:

1. The question of vacancy should have been submitted to the jury; citing *Bonenfant v. Ins. Co.*, 76 Mich. 653; *Cummins v. Ins. Co.*, 67 N. Y. 260; *Eddy v. Ins. Co.*, 70 Iowa, 472; *Ins. Co. v. Tucker*, 92 Ill. 64.

2. A forfeiture is not favored at law or in equity, and the provisions for it in a contract will always be strictly construed; citing *Lyon v. Ins. Co.*, 55 Mich. 146; *Bonenfant v. Ins. Co.*, 76 Id. 653.

3. The building was insured with the understanding that it was occupied by a tenant, which became a part of the contract, and should be taken into consideration in construing the policy. The Court will take notice of ordinary business affairs, and that buildings occupied by tenants are liable to change occupants, and the defendant must be held to a like notice. It is unreasonable to suppose that the parties intended that the premises should be deemed vacant or unoccupied while the tenant was moving out, and retained possession to the exclusion of the plaintiff. The tenant had a couple of loads of household goods in the house, and retained the key, without notice to plaintiff, who had been directed by the local agent to notify him when the tenant's things were all moved out, and he would give a permit to let the house remain vacant for a time.

4. The reasoning of some of the cases that the insurer is entitled to such care and supervision as occupancy gives, as a reason why actual occupancy should be required, can have no force with this Court; citing *Shackelton v. Sun Fire Office*, 55 Mich. 289; *Stupetski v. Ins. Co.*, 43 Id. 373.

5. Admitting that the house was vacant and unoccupied within the meaning of the policy, the conduct of the adjuster constituted a waiver on the part of the defendant; citing *Ins. Co. v. Davenport*, 37 Mich. 609; *Ins. Co. v. Kittle*, 39 Id. 51; *Ins. Co. v. Bowen*, 40 Id. 147; *Olmstead v. Ins. Co.*, 50 Id. 200; *Ins. Co. v. Gargett*, 42 Id. 289; *Carpenter v. Ins. Co.*, 61 Id. 635; *Marthinson v. Ins. Co.*, 64 Id. 372; *Cobbs v. Fire Association*, 68 Id. 463; *Cleaver v. Ins. Co.*, 71 Id. 414; *Mill Co. v. Ins. Co.*, 72 Id. 654.

*Daniel A. Ferguson*, for appellant.

*Barkworth & Cobb*, for defendant, contended:

1. In all the cases in which the policy has been held valid during temporary absence, there has been the intention to return and resume the interrupted occupation. This was the basis of both of the Michigan cases cited in plaintiff's brief, and in the Shackelton case the Court say that it is with some hesitation that the facts in that case are held to warrant the application of the principle; and the following cases show how closely the line is drawn: *Bennett v. Ins. Co.*, 50 Conn. 420; *Herrman v. Ins. Co.*, 85 N. Y. 162; *Whitney v. Ins. Co.*, 72 Id. 117; *Corrigan v. Ins. Co.*, 122 Mass. 298.

2. In the case at bar the occupancy had terminated. A mere privilege of storage remained, and this storage was all that prevented an *absolute* vacancy. The test of occupancy, as laid down by this Court, is absolutely absent, both in fact and in intention; citing *Marsh v. Bristol*, 65 Mich. 379; *Bonenfant v. Ins. Co.*, 76 Id. 653.

3. The most that can be said as to the statement of the adjuster is that it was an offer of compromise. Plaintiff was not misled, but understood that defendant denied liability, and would not pay the loss, but would give a moiety of the claim to secure the surrender of the policy without litigation. No action possible to plaintiff was thereby prevented, nor was he in any manner discommoded or impeded.

4. The claim that the plaintiff had a right to rely upon the local agent's statement as to when to get a vacancy permit is met by the fact that the policy provided that no agent of the company had power or authority to waive or alter any of the terms or conditions of the policy, or to make indorsements

thereon (*Cleaver v. Ins. Co.*, 65 Mich. 527), and is within the principle of *Ins. Co. v. Hurd*, 37 Id. 11.

5. There can be no good reason why an insurer shall not have the full benefit of his contract rights in provisions as clearly reasonable as those providing against vacancy or inoccupancy, and a waiver ought not to be inferred from anything short of prejudicial conduct, or language which has misled the insured to his detriment; citing *Ins. Co. v. Fay*, 22 Mich. 467.

GRANT, J. This is a suit upon a policy of insurance to recover for a loss, by fire, of a dwelling-house covered by the policy.

The principal question in the case is whether the building was " vacant or unoccupied " so as to avoid the policy. The house had been occupied by a tenant of the plaintiff. The plaintiff had notified his tenant to vacate the house, which the tenant agreed to do and did. The tenant rented another house, and moved into it with his family two days before the fire occurred. Plaintiff lived about a mile from the house, and was informed that his tenant had left. The tenant left some goods in the house, but they were not such as he needed at the time for the purpose of housekeeping. He spoke to the plaintiff about leaving them there temporarily. The policy provided that it should be null and void if at any time the house should be or become vacant or unoccupied.

I think the house was "vacant," within the rule of *Bonenfant v. Insurance Co.*, 76 Mich. 653. It was there said: " Occupancy implies an actual use of the house as a dwelling-place." This dwelling-house had been abandoned, so far as any occupancy was concerned. The tenant had left, with no intention to return, and no other person was moving in to take his place. The contract of insurance was violated, and thereby rendered null and void. The occupancy provided for in the contract of insurance had

ceased. This was not a question of fact for the jury. The facts were undisputed. The question was therefore one of law for the determination of the court.

It is insisted by the plaintiff that the defendant waived its right to make this a defense. The policy provided that no other than the superintendent of the western department of the defendant at Chicago should have power or authority to waive or alter any of the terms or conditions of the policy, and that all the agreements by the superintendent must be signed by him. No waiver, written or verbal, by this superintendent, is claimed. Upon being informed of the loss the adjuster and general agent for Michigan, by appointment, met the plaintiff, who told him about the removal of the tenant from his house. Plaintiff testifies that the adjuster replied:

"We consider it vacant, but we are not going to be technical about the matter. We are satisfied that you had the loss. I will pay you $450, and cancel your policy, if you will take it."

The policy was for $900, and the property was worth considerably more than that. Plaintiff declined to accept the proposition, when the adjuster again said:

"Well, think of it two or three weeks, and, any time you conclude to accept this offer, write to me, and I will cancel your policy, and pay you $450."

This did not constitute a waiver. A man may, without prejudice to his rights, offer to buy his peace. This offer of compromise was inadmissible in any aspect of the case. The solemn and deliberate contracts of parties cannot be set aside by such offers. The language used by the adjuster contained no admission of liability on the part of the defendant. Plaintiff's rights under the contract were not prejudiced or injured by this conversation.

He lost nothing by it, and was not thereby induced to forego any of his rights under the policy. The circuit judge, therefore, properly instructed the jury to render a verdict for the defendant.

Judgment affirmed, with costs.

The other Justices concurred.