**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GROCERY OUTLET INC.,
　　　　　*Plaintiff-Appellant,*

　　　　v.

ALBERTSON'S INC.; AMERICAN
STORES COMPANY, LLC; LUCKY
STORES, INC.; AMERICAN STORES
COMPANY, LLC,
　　　　　*Defendants-Appellees.*

No. 06-16380

D.C. No.
CV-06-02173-JSW

GROCERY OUTLET INC.,
　　　　　*Plaintiff-Appellee,*

　　　　v.

ALBERTSON'S INC.; AMERICAN
STORES COMPANY, LLC; LUCKY
STORES, INC.; AMERICAN STORES
COMPANY, LLC,
　　　　　*Defendants-Appellants.*

No. 06-16448

D.C. No.
CV-06-02173-JSW

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
February 13, 2007—San Francisco, California

Filed August 9, 2007

Before: J. Clifford Wallace, Dorothy W. Nelson, and
M. Margaret McKeown, Circuit Judges.

9551

Per Curiam Opinion;
Concurrence by Judge Wallace;
Concurrence by Judge McKeown

## COUNSEL

Peter W. Craigie, Kristen E. Drake, Craigie, McCarthy & Clow, San Francisco, California, and Louis T. Pirkey, Susan J. Hightower, Pirkey Barber, LLP, Austin, Texas, for the plaintiff-appellant.

Robert A. Weikert, Veronica Colby Devitt, John A. Chatowski, Marlene J. Williams, Thelen Reid & Priest, LLP, San Francisco, California, for the defendants-appellees.

## OPINION

PER CURIAM.

Grocery Outlet, Inc. ("Grocery") appeals from a preliminary injunction granted in favor of Albertson's, Inc.

("Albertson's"), one of its competitors in the retail grocery industry. The district court concluded, at this stage of the proceedings, that Albertson's was the legal owner of the LUCKY mark for retail grocery services and products and rejected Grocery's claim that Albertson's abandoned the LUCKY mark through its publicly advertised announcement that LUCKY stores were converted to Albertson's stores after a company merger in late 1999.

We review a preliminary injunction for abuse of discretion. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 (9th Cir. 2001). We review underlying legal issues *de novo* and findings of fact for clear error. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

A preliminary injunction may be granted in a trademark case where the moving party demonstrates either (1) "a combination of probable success on the merits *and* the possibility of irreparable injury *or* (2) the existence of serious questions going to the merits *and* that the balance of hardships tips sharply in [its] favor." *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985) (emphases in original). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (quotation marks and citation omitted). They are not separate tests but "the outer reaches of a single continuum." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980) (quotation marks and citation omitted).

**[1]** To establish infringement of a registered trademark, the trademark holder must show that it is (1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark. 15 U.S.C. § 1114(1); *Brookfield*, 174 F.3d at 1046. Abandonment is a defense to a claim of infringement of a registered trademark. 15 U.S.C.

§ 1115(b)(2). The Lanham Act provides for two ways that a trademark may be abandoned, namely, through (1) nonuse, or (2) the mark becoming generic. *See* 15 U.S.C. § 1127. To show abandonment by nonuse, the party claiming abandonment must prove both the trademark owner's (1) "discontinuance of trademark use" and (2) "intent not to resume such use." *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 935 (9th Cir. 2006) (citing 15 U.S.C. § 1127).

**[2]** Grocery does not dispute the district court's finding that Albertson's is the legal owner of various federal and state trademark registrations of the LUCKY mark associated with retail grocery services and products. Nor does it dispute that Grocery's use of the LUCKY mark for retail grocery services was likely to cause consumer confusion. Thus, the district court's conclusion that Albertson's was likely to succeed on its trademark infringement claim necessarily turned on whether Grocery was likely to prove its abandonment defense.

Although the parties disagree as to the standard of proof applicable to the defense of abandonment, Grocery waived its challenge on this point by adopting the clear and convincing standard in its briefing in the district court. In light of the district court's findings and this concession, we need not resolve the burden of proof issue.

**[3]** The district court's analysis is careful and thorough. The findings are preliminary and, as the district court noted, "are not meant to be binding." We conclude that the district court did not abuse its discretion in concluding that Albertson's demonstrated a strong likelihood of prevailing on the merits of its trademark infringement claim and the possibility of irreparable injury in the absence of a preliminary injunction. Nor did it abuse its discretion in concluding that Grocery did not establish its defense of abandonment, where Albertson's offered sufficient evidence of its intent to resume use of

the LUCKY mark within the reasonably foreseeable future during the short period of alleged non-use. *See* 15 U.S.C. § 1127; *Electro Source*, 458 F.3d at 935.

**AFFIRMED**.

---

WALLACE, Senior Circuit Judge, concurring:

I agree with our opinion resolving this appeal, but write separately on the burden-of-proof issue. We have held that under the Lanham Act, 60 Stat. 427, 15 U.S.C. §§ 1051-1127 (1946), the burden of proving abandonment is "strict." *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal.*, 694 F.2d 1150, 1156 (9th Cir. 1982). We have also indicated that this strict burden is equivalent to a "high" one. *See Edwin K. Williams & Co., Inc. v. Edwin K. Williams & Co.-East*, 542 F.2d 1053, 1059 (9th Cir. 1976), *citing Am. Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 625 (5th Cir. 1963) (holding that defendant failed to meet the "burden of strict proof" required to show abandonment).

Despite these statements, Judge McKeown repeats the incorrect argument she recently made in *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 935 n.2 (9th Cir. 2006), that the burden of proof in abandonment cases is a question unanswered in our circuit. True, we are more accustomed to applying the "clear and convincing evidence" and "preponderance of the evidence" standards. But merely because *Prudential* and *Williams* invoke an unfamiliar or forgotten standard does not mean that the burden-of-proof issue is unresolved or that we may disregard those cases.

In my view, meeting a strict burden requires proof by clear and convincing evidence. Before the enactment of the Lanham Act, courts often required strict proof to establish a forfeiture. *See, e.g., Empress Theatre Co. v. Horton*, 266 F. 657,

664 (8th Cir. 1920) (rights under a lease); *United States v. Four Packages of Cut Diamonds*, 247 F. 354, 357 (D.C.N.Y. 1917) (diamonds); *Aetna Ins. Co. of Hartford, Conn. v. Robinson*, 10 N.E.2d 601, 604 (Ind.1937) (rights under an insurance policy). This was also the standard applied to abandonment of trademarks. *See, e.g.*, *Saunders v. Stringer*, 251 N.W. 342, 343 (Mi. 1933); *Julian v. Hoosier Drill Co.*, 78 Ind. 408, 1881 WL 6748, at *3 (Ind. 1881) (per curiam) (*Hoosier Drill*).

In equally disparate cases, however, pre-Lanham Act courts required clear and convincing evidence to establish a forfeiture. *See, e.g., Hammer v. Garfield Min. & Mill. Co.*, 130 U.S. 291, 301 (1889) (mine); *C. C. Co. v. United States*, 147 F.2d 820, 823-24 (5th Cir. 1945) (canned oysters); *Carrington v. Crandall*, 147 P.2d 1009, 1011 (Idaho 1944) (real property); *Hoff v. Girdler Corp.*, 88 P.2d 100, 102 (Colo. 1939) (en banc) (gas lease) (requiring "clear, unequivocal and decisive" evidence); *Lane v. Amis Bros.*, 43 P.2d 73, 75 (Okla. 1935) (homestead); *Dwyer v. Ill. Oil Co.*, 252 N.W. 837, 838 (Minn. 1934) (rights under a contract); *Supervisor of Pub. Accounts v. Montreuil*, 157 So. 783, 784 (La. App. 1934) (cigarettes and a truck). And at least one court expressly required clear and convincing evidence of abandonment of a trademark. *See Mathy v. Republic Metalware Co.*, 35 App. D.C. 151, 1910 WL 20792, at *3 (D.C. Cir. 1910); *see also Hoosier Drill*, 78 Ind. 408, 1881 WL 6748, at *3 (requiring "clear and unmistakable evidence").

Strict proof was no different than clear and convincing evidence, and they were the same burden. Unsurprisingly, when the Court of Appeals of New York required "strict proof" of trademark abandonment, *see Neva-Wet Corp. of Am. v. Never Wet Processing Corp.*, 13 N.E.2d 755, 761 (N.Y. 1938), it relied on *Mathy* and *Hoosier Drill*.

It is not difficult to imagine why there were simultaneously two equivalent standards of proof under the common law.

Statutes or contracts underlying a forfeiture were "strictly" construed. *See C. C. Co.*, 147 F.2d at 824; *Cartos v. Hartford Acc. & Indem. Co.*, 169 S.E. 594, 598 (Va. 1933). The same language used to describe the rule of construction may also have come to describe the "higher degree of proof than a mere preponderance" that was the "natural corollary" of that rule. *C. C. Co.*, 147 F.2d at 824.

I will not presume, as Judge McKeown does, that *Prudential* and *Williams* idly required "strict proof" or that a "high burden" be met. I have no doubt that our court meant that abandonment under the Lanham Act must be shown by clear and convincing evidence. This is the only plausible translation of strict proof and high burden, and Judge McKeown offers no other.

I agree with Judge McKeown that 15 U.S.C. § 1127 says nothing about the burden of proof, but she mistakenly concludes that the preponderance of the evidence standard was the "traditional" one. The traditional standard was clear and convincing evidence (or strict proof), and there is nothing in the Lanham Act indicating that Congress relaxed this burden. *See Chappell v. Robbins*, 73 F.3d 918, 924 (9th Cir. 1996) ("We may fairly presume that Congress is aware of the common-law background against which it legislates . . . .").

Judge McKeown also correctly observes that the abandonment defense under the Lanham Act is different than the one under the common law. The Lanham Act requires proof of "intent not to resume . . . use" and permits a presumption of abandonment in certain cases, *see* 15 U.S.C. § 1127, while the common law required proof of "intent to abandon," *Mathy*, 1910 WL 20792, at *3. But that does not mean that the Lanham Act adjusted the burden required to prove the defense. In any event, *Prudential* and *Williams* require a different conclusion. I would follow our cases.

McKEOWN, Circuit Judge, concurring:

Given the standard of review on appeal and Grocery's concession as to the standard of proof for abandonment, I concur in the court's per curiam opinion. I write separately to express my view on a question unanswered in our circuit. Although we have previously held that "[a]bandonment of a trademark, being in the nature of forfeiture, must be strictly proved," *Prudential Insurance Company of America v. Gibraltar Financial Corporation of California*, 694 F.2d 1150, 1156 (9th Cir. 1982), and that "[b]ecause a finding of insufficient control [of a tradename] essentially works a forfeiture, a person who asserts insufficient control must meet a high burden of proof," *Edwin K. Williams & Co., Inc. v. Edwin K. Williams & Co.-East*, 542 F.2d 1053, 1054 (9th Cir. 1976), we have not elaborated on the meaning of "strict proof" or "high burden." *See Electro Source, LLC v. Brandess-Kalt-Aetra Group, Inc.*, 458 F.3d 931, 935 n.2 (9th Cir. 2006) (reserving the issue of the standard of proof to show trademark abandonment).[1]

In my view, the language of 15 U.S.C. § 1127[2] does not

---

[1] The brief analysis in *Edwin K. Williams & Co.* does not address what a "high" burden requires and the case relied on refers only to the "strict" burden of proof of abandonment otherwise undefined in our circuit. *See id.* at 1054 (citing *Am. Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 624-25 (5th Cir. 1963)).

[2] A mark shall be deemed to be "abandoned" if either of the following occurs:

(1)  When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

(2)  When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with

support an elevated standard of "clear and convincing." The statute does not impose a burden beyond the traditional preponderance of the evidence standard applicable in civil matters. Nor is there any evidence that Congress intended to raise the bar to clear and convincing evidence,[3] as argued by Albertson's. The federal courts of appeals that have considered the issue are in accord and have consistently applied the preponderance of the evidence standard in the trademark abandonment context. *See Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000) (applying preponderance of the evidence standard); *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 938 (7th Cir. 1989) (same); *Cervecceria Centroamericana, S.A. v. Cervecerria India, Inc.*, 892 F.2d 1021, 1023-24 (Fed. Cir. 1989) (same, in appeal from trademark cancellation proceeding before Trademark Trial and Appeal Board). These cases are predicated on the statutory language of the Lanham Act, not on the common law or some judicially-created hybrid standard.

In addressing the Lanham Act's changes from the common law with respect to the law of abandonment, the Federal Circuit noted that

> [a]t common law there was no similar presumption

---

> which it is used or otherwise to lose its significance as a mark. Purchaser motivation shall not be a test for determining abandonment under this paragraph.

15 U.S.C. § 1127.

[3]Rather, the statute recognizes that proving the subjective intent of a trademark holder may be burdensome for a defendant and provides two aids for demonstrating intent not to resume use: (1) intent may be inferred from the circumstances, and (2) a rebuttable presumption of abandonment arises after three consecutive years of nonuse. 15 U.S.C. § 1127; *see Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167, 1174 (11th Cir. 2002). With that acknowledgment expressed in the statute, I do not presume that Congress intended to raise the burden of proof without specifying its intention to do so.

of abandonment of a mark simply from proof of non-use. A challenger had to prove not only nonuse of the mark but also that the former user *intended to abandon* the mark. However, with respect to rights under the Lanham Act, proof of abandonment was facilitated by the creation of the . . . statutory presumption.

*Imperial Tobacco, Ltd., Assignee of Imperial Group PLC v. Philip Morris, Inc.*, 899 F.2d 1575, 1579 (Fed. Cir. 1990) (appeal from trademark cancellation proceeding before TTAB) (citations omitted). Thus, the Federal Circuit cautioned that "statements from opinions under the common law of abandonment concerning the nature of the element of intent and who had the burden of proof cannot be applied indiscriminately to an abandonment case under the Lanham Act." *Id.* Although the vacuum in our circuit with respect to a square holding on the burden of proof in abandonment cases may cause some litigants and judges to fall back on pre-Lanham Act cases, we are bound by the statute, not the common law.[4]

---

[4]In his separate concurrence, Judge Wallace argues that the applicable burden is clear and convincing evidence, relying on a case decided more than 30 years before the Lanham Act. *See Mathy v. Republic Metalware Co.*, No. 623, 35 App. D.C. 151, 1910 WL 20792, at *3 (D.C. Cir. 1910). That case is inapposite, however, as it was decided under the common law regime requiring proof of "intent to abandon," *see id.*, rather than the Lanham Act, which requires proof of "intent not to resume use" and permits a presumption of abandonment after three consecutive years of nonuse. *See* 15 U.S.C. § 1127; *see also Exxon Corp. v. Humble Exploration Co., Inc.*, 695 F.2d 96, 102-03 (5th Cir. 1983) ("There is a difference between intent not to abandon or relinquish and intent to resume use in that an owner may not wish to abandon its mark but may have no intent to resume its use. . . . An 'intent to resume' *requires the trademark owner to have plans to resume commercial use of the mark*. Stopping at an 'intent not to abandon' tolerates an owner's protecting a mark with neither commercial use nor plans to resume commercial use. Such a license is not permitted by the Lanham Act.") (emphasis added). Nor do the other non-trademark cases, also decided before adoption of the Lanham Act, shed light on the applicable burden of proof under the statute.